578 P.2d 193

**ALFRED ENTERPRISES, INC.,**
**Appellant,**

v.

**CHARTER MEDICAL CORPORATION,**
**Appellee.**

**No. 2 CA–CIV 2659.**

Court of Appeals of Arizona,
Division 2.

Feb. 15, 1978.

Rehearing Denied March 22, 1978.

Review Denied April 18, 1978.

Mary Anne Peters, Tucson, for appellant.

Burch, Cracchiolo, Levie, Guyer & Weyl, P. A. by Daniel Cracchiolo and Arda S. Rutherford, Phoenix, for appellee.

## OPINION

RICHMOND, Chief Judge.

By an action for declaratory judgment, Alfred Enterprises, Inc. (Alfred) sought interpretation of a written agreement between Alfred and Charter Medical Corporation (Charter) and a declaration of the parties' rights under the agreement. The matter was tried to the court in Pima County. After Alfred rested, the court entered judgment in favor of Charter on the ground that Alfred "had failed to prove a *prima facie* case."

On September 24, 1974, in another case involving Charter and the Arizona State Board of Health and Arizona State Department of Health, the Maricopa County Superior Court had entered a stipulated judgment giving Charter the right to obtain from the Arizona Department of Health Services a permit to construct and a license to operate a 160-bed hospital in Tucson. The judgment provided for commencement of construction by July 24, 1975, "except that [Charter] shall not be responsible for any delays which are beyond the control of [Charter]."

On May 26, 1975, Charter and Alfred entered into three related agreements expressing their intent to become joint venturers in constructing and operating the proposed hospital. The first agreement and an amendment to it dated June 6, 1975, are at issue herein. The agreement provided that in return for the conveyance to Alfred by Charter of permits, authorizations, con-

struction plans and other documents related to construction of the hospital, Alfred would pay to Charter the sum of $475,000. Under the June 6 amendment, the money was to be paid as follows:

"2. Second Party [Alfred] agrees to pay to Charter the sum of FOUR HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($475,000.00) as follows:

"(a) In the event there is granted, with the approval of State authorities or otherwise, an extension of time past the existing July 24, 1975 deadline for commencing of construction of the hospital facilities,

"(i) the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) payable to Charter within thirty (30) days of the granting of such extension.

"(ii) the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) payable to Charter within sixty (60) days after the granting of said extension.

"(iii) the sum of THREE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($375,000.00) payable to Charter within forty-five (45) days after the approval of the Arizona Corporation Commission and Tucson Gas and Electric Company as to the providing of gas or other utilities for the hospital facility.

"(b) In the event construction is commenced by July 24, 1975 and no extension, as described in (a) above, is obtained or in the event Second Party continues to have the right to commence construction on the project for any reason even though no such extension has been granted,

"(i) the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) payable to Charter within thirty (30) days after commencement of construction or July 24, 1975, whichever occurs first.

"(ii) the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) payable to Charter within sixty (60) days after the earlier of the two dates referred to in (b)(i).

"(iii) the sum of THREE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($375,000.00) payable to Charter within forty-five (45) days after the approval of the Arizona Corporation Commission and the Tucson Gas and Electric Company as to the providing of gas or other utilities for the hospital facility. "For purposes of this Paragraph 2, the term 'commencement of construction' shall mean the issuance of a building permit by appropriate municipal authority together with the performance of any work on the site of construction of the hospital facility.

"2. [sic] In the event that Second Party fails to pay, in a timely manner, any amount to Charter due under amended Paragraph 2 of the Agreement or in the event Second Party abandons the project (whether by failing to commence construction by a stated or extended deadline or otherwise), then Second Party shall promptly return to Charter any and all plans, drawings and other documents relating to the hospital project in the possession of Second Party, including any and all rights which Second Party may have under the Stipulated Judgment, dated September 24, 1974, in Civil Action No. C 269847, Superior Court of the State of Arizona, County of Maricopa."

As of July 24, 1975, construction had not commenced and no extension of time had been granted. On October 17, 1975, Charter notified Alfred by letter that Charter was entering into a new joint venture agreement with Hospital Corporation of America, replacing the earlier arrangement between Charter and Alfred. The letter went on to state:

" * * * As you know, for whatever reasons, Alfred Enterprises has not fulfilled its commitments with regard to either financing or payment of certain monies due Charter on specific dates as set forth in agreements between Charter and Alfred Enterprises. Therefore, there is no basis for a continuing relationship between our two companies."

On April 14, 1976, in the Maricopa County action, the court in an amended judgment found that the shortage of gas energy, which had precluded commencement of con-

struction prior to July 24, 1975, constituted a delay beyond Charter's control.

At the time of trial, Alfred had made no payments under its agreement with Charter and construction had not begun. In findings of fact and conclusions of law made pursuant to 16 A.R.S. Rules of Civil Procedure, Rule 41(b), the trial court found that Alfred had the right to commence construction on and after July 24, 1975, even though it did not do so because of the shortage of gas energy, and therefore was required to make the first payment under paragraph 2(b)(i) of the amended agreement within 30 days after July 24, 1975. Alternatively, in answer to Alfred's contention that the amended judgment constituted an extension past the July 24, 1975 deadline and that paragraph 2(a) was applicable, the court found that the agreement was "terminated" by Alfred's failure to tender payment of $25,000 within 30 days after April 14, 1976, the date the amended judgment was entered.

On appeal, Alfred argues that paragraph 2(b) should not be applied because its right to commence construction even though no extension had been granted was not established until April 14, 1976, long after the time for the first payment under 2(b) had expired. While it is true that there was no judicial determination of such right within 30 days after July 24, 1975, we do not agree that Alfred thereby was excused from timely performance under 2(b). To the contrary, the language in question seems clearly designed for a situation like the one that arose, where no extension was obtained or required because of a delay beyond Charter's control. To accept Alfred's argument that subsequent judicial determination of its right to commence construction after July 24 constituted an extension making 2(a) applicable would render meaningless that portion of 2(b) on which the trial court based its judgment. It is axiomatic that a written contract should, if possible, be construed so as

to give effect to all its parts. *Ash v. Egar,* 25 Ariz.App. 72, 541 P.2d 398 (1975). Any apparent conflict between the provisions of 2(a) and 2(b) is resolved by determining that the former was intended to apply only in the event an extension was granted on or before July 24, 1975.

Further, we do not regard the amended judgment as an "extension of time" as the term is used in the June 6 amendment to the parties' agreement, but rather as a determination that Charter was excused from timely performance by the energy shortage beyond its control. Such determination established Alfred's right to commence construction after July 24, 1975, despite the absence of any extension past the deadline as contemplated under paragraph 2(a).

For all of the foregoing reasons, we need not discuss the trial court's alternative basis for its judgment and Alfred's contention that a tender would have been useless after Charter repudiated the agreement in October 1975.[1]

The judgment of the trial court is affirmed.

HOWARD and HATHAWAY, JJ., concur.

---

1. Alfred also contends that it was denied a fair trial by remarks of counsel in chambers that may have prejudiced the trial judge. It cites no legal authorities in support of its position, and we deem the issue abandoned for failure to comply with 17A A.R.S. Rules of the Supreme Court, Rule 5(b).